# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TODD ALAN BROWN, | No. 4:22-CV-01155 |
| Plaintiff, | |
| v. | (Chief Judge Brann) |
| SUPERINTENDENT RIVELLO, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### AUGUST 31, 2023

Plaintiff Todd Alan Brown filed the instant *pro se* Section 1983[1] action in July 2022, alleging constitutional violations by various SCI Huntingdon officials and medical staff.  The Court performed mandatory screening and dismissed Brown's complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.  Brown filed an amended complaint, which was likewise screened under Section 1915A, with several claims surviving the second sufficiency review.  The remaining Defendants now move to dismiss Brown's amended complaint or, alternatively, for summary judgment based on Brown's failure to exhaust administrative remedies.  Defendants' Rule 56 motion will be granted in part and denied in part.

---

[1]   42 U.S.C. § 1983.  Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

## I.      BACKGROUND

In Brown's amended complaint, he asserted Section 1983 claims under the Fourteenth Amendment for deliberate indifference to serious medical needs.[2] Brown named as defendants psychologist Jessica Cousins, corrections officer Greg Hicks, unit manager B. Hollibaugh, and "CB officers 2 to 10 shift regulars Sheeley, Stevens, [and] Singer."[3]  The gravamen of Brown's lawsuit is that these SCI Huntingdon officials were deliberately indifferent to his serious mental health needs.

Specifically, Brown avers that he suffers from a mood disorder, depression, anxiety, restlessness, hyperactivity, impulsivity, and poor reasoning,[4] and tried to take his own life on April 29, 2022.[5]  Brown alleges that he raised concerns to prison officials the day before he actually attempted suicide, but no one took any preventive action.[6]  According to Brown, following his suicide attempt, he had to be life-flighted to a hospital, was on life support for 24 hours, and lost feeling on the left side of his face for a month, among other injuries.[7]

---

[2]   Because Brown was a pretrial detainee at the time of the events, his claims implicate the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment.  *See Jacobs v. Cumberland County*, 8 F.4th 187, 193-94 (3d Cir. 2021); *Thomas v. Cumberland County*, 749 F.3d 217, 223 n.4 (3d Cir. 2014).

[3]   Doc. 22 at 1, 15.

[4]   *Id.* at 5, 12.

[5]   *Id.* at 2, 8.

[6]   *Id.* at 5-9.

[7]   *See id.* at 2, 4; Doc. 1 at 5.

On December 28, 2022, the Court dismissed Brown's claims against Cousins and Hollibaugh for failure to state a claim, finding that Brown had not plausibly alleged deliberate indifference by either Defendant.[8]  The Fourteenth Amendment claims against Hicks, Sheeley, Stevens, and Singer, however, were permitted to proceed past the screening stage.[9]  Brown plausibly alleged deliberate indifference against Hicks, claiming that Hicks ignored his mental health crisis and that he had fashioned a makeshift noose in his cell the day before the suicide attempt.[10]  Brown also plausibly alleged deliberate indifference against Sheeley, Stevens, and Singer, asserting that they had continually harassed him and turned down his pleas for help, calling Brown "annoying" and "needy."[11]

Following service under Rule 4, the four remaining Defendants moved to dismiss Brown's amended complaint or, alternatively, for summary judgment based on Brown's failure to exhaust administrative remedies.[12]  The Court subsequently issued an order informing Brown that it would "'consider exhaustion in its role as a fact finder under Small[ v. Camden County, 728 F.3d 265 (3d Cir. 2013)]' and . . . provide him an 'opportunity to respond.'"[13]  The Court gave Brown 21 days to supplement his briefing with any additional argument or

---

8    *See* Doc. 20 at 7-11.
9    *See id.* at 11-13.
10   *See id.* at 11.
11   *See id.* at 12.
12   *See generally* Doc. 26.
13   Doc. 34 (citing *Paladino v. Newsome*, 885 F.3d 203, 208, 211 (3d Cir. 2018)).

evidence in support of his position that he exhausted administrative remedies.[14]

Brown failed to provide any response beyond his previous brief in opposition.  The

Court, however, ordered Defendants to supplement their Rule 56 motion with the

full administrative record for several grievances for which Defendants had only

provided piecemeal documentation.[15]  Defendants timely complied,[16] and their

motion is ripe for disposition.

## II.    STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate

and dispose of factually unsupported claims or defenses."[17]  Summary judgment is

appropriate where "the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."[18]  Material

facts are those "that could alter the outcome" of the litigation, and "disputes are

'genuine' if evidence exists from which a rational person could conclude that the

position of the person with the burden of proof on the disputed issue is correct."[19]

At the Rule 56 stage, the Court's function is not to "weigh the evidence and

determine the truth of the matter" but rather "to determine whether there is a

---

[14]   *See id.* at 2.
[15]   *See* Doc. 35.
[16]   *See* Doc. 37.
[17]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[18]   FED. R. CIV. P. 56(a).
[19]   *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (*quoting Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

genuine issue for trial."[20]  The Court must view the facts and evidence presented

"in the light most favorable to the non-moving party" and must "draw all

reasonable inferences in that party's favor."[21]  This evidence, however, must be

adequate—as a matter of law—to sustain a judgment in favor of the nonmoving

party on the claim or claims at issue.[22]  A "scintilla of evidence" supporting the

nonmovant's position is insufficient; "there must be evidence on which the jury

could reasonably find for the [nonmovant]."[23]  Succinctly stated, summary

judgment is "put up or shut up time" for the nonmoving party.[24]

## III.   DISCUSSION

Defendants attack Brown's suit on two fronts.  First, they assert that Brown

did not properly exhaust any of his claims against the remaining four corrections

officers.  They also contend that Brown's amended complaint should be dismissed

for failure to comply with Federal Rules of Civil Procedure 8 and 10.  The Court

has already screened Brown's amended complaint and found little difficulty in

understanding his claims despite his less-than-perfect *pro se* pleading.  Dismissal

---

[20]   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[21]   *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014).

[22]   *Liberty Lobby*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986).

[23]   *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252) (alteration in original).

[24]   *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Berkeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).

under Rules 8 and 10, therefore, is unwarranted.  Defendants' argument regarding

administrative exhaustion, however, requires closer inspection.

### A.      Exhaustion for Pennsylvania Department of Corrections

The Prison Litigation Reform Act of 1995 (PLRA)[25] requires prisoners to

exhaust available administrative remedies before suing prison officials for alleged

constitutional violations.[26]  Proper exhaustion is mandatory, even if the inmate is

seeking relief—like monetary damages—that cannot be granted by the

administrative system.[27]  The exhaustion process a prisoner must follow is

governed by the contours of the prison grievance system in effect where the inmate

is incarcerated.[28]

Pennsylvania's Department of Corrections (DOC) employs a three-step

grievance process that must be completed to properly exhaust administrative

remedies in most cases.[29]  If informal resolution attempts do not solve the problem,

the first step is to file a written grievance (using form DC-804, Part 1) with the

Facility Grievance Coordinator within 15 working days after "the event upon

which the claim is based."[30]  An adverse decision by the grievance coordinator

---

[25]   42 U.S.C. § 1997e *et seq.*

[26]   *See* 42 U.S.C. § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted).

[27]   *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

[28]   *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Woodford*, 548 U.S. at 90-91.

[29]   *See Booth v. Churner*, 206 F.3d 289, 292 n.2 (3d Cir. 2002); COMMONWEALTH OF PA., DEP'T OF CORR., INMATE GRIEVANCE SYS., Policy No. DC-ADM 804 (May 1, 2015) (hereinafter "DC-ADM 804").

[30]   DC-ADM 804 § 1(A)(3)-(5).

must be appealed to the Facility Manager within 15 working days of the initial-review response or rejection.[31]  Finally, an adverse decision by the Facility Manager must be appealed to "Final Review" with the Secretary's Office of Inmate Grievances and Appeals (SOIGA), and again must be submitted within 15 working days of the date of the Facility Manager's decision.[32]

The DOC has specific requirements for grievances submitted by inmates. Those requirements include, among other things, that the grievance "be legible [and] understandable"; "include a statement of the facts relevant to the claim" as well as "the date, approximate time, and location of the event(s) that gave rise to the grievance"; that the prisoner "identify individuals directly involved in the event(s)"; and that the grievance include "the specific relief sought," including "compensation or other legal relief normally available from a court."[33]

## B.    Brown's Grievance History

Brown's lawsuit concerns alleged medical indifference during pretrial detention at SCI Huntingdon.  His allegations primarily involve events on April 28 and 29, 2022, when he attempted suicide, and his injuries therefrom.  In and around this time (from April 1, 2022, to July 13, 2022), Brown filed twelve grievances at SCI Huntingdon: numbers 974441, 975666, 976379, 977541,

---

[31]   *Id.* § 2(A)(1).
[32]   *Id.* § 2(B)(1).
[33]   *Id.* § 1(A)(11).

978098, 978173, 981142, 985177, 985427, 985430, 989308, and 989665.[34]

Importantly, Brown does not point to any other grievances that would support his assertion that he exhausted his administrative remedies, so the Court will constrain its review to these twelve grievances.

The question presented by the instant Rule 56 motion is whether Brown fully exhausted any of his medical indifference claims against Hicks, Sheeley, Stevens, and Singer—the only Defendants remaining in this litigation.  After thorough review, the Court finds that Brown exhausted his claim against defendant Hicks only.

### 1.    Irrelevant Grievances

Multiple grievances can be disposed of summarily.  Grievance number 977541 involved complaints regarding prison mail and was not appealed beyond the initial response.[35]  Grievance number 978173 concerned the law library and also was not appealed beyond the initial response.[36]  Grievance number 985177 raised issues with Brown's "medical co-pay" and was not appealed beyond the Facility Manager response.[37]

---

[34]  *See* Doc. 30-1 at 4 ¶ 12.  Brown has not challenged the veracity or accuracy of Defendants' supporting affidavits in any way.  Accordingly, those declarations—made under penalty of perjury—will be accepted as true unless directly contradicted by the record.  *See* LOCAL RULE OF COURT 56.1.

[35]  *See* Doc. 30-1 at 45.

[36]  *See id.*

[37]  *See id.*

Grievance number 974441 is dated April 3, 2022, and involves complaints about Brown's injured finger.[38]  Although this grievance was appealed all the way to the SOIGA, it does not name any remaining Defendant and does not involve mental health care.[39]  Grievance number 975666 is dated April 11, 2022, and again involves complaints concerning the medical treatment Brown received at SCI Smithfield for his injured finger.[40]  Although this grievance was appealed to the SOIGA, it does not name any remaining Defendant and does not involve mental health care.[41]

Grievance number 976379 is dated April 13, 2022, and also raises concerns regarding the medical treatment (or lack thereof) Brown received for his finger.[42]  This grievance does not identify any remaining Defendant, does not deal with mental health care, and was not adjudicated beyond the initial rejection.[43]  Grievance number 978098 is dated April 26, 2022, and concerns complaints against a "nurse Trice" for failing to properly attend to Brown's injured finger.[44]  This grievance was not appealed beyond the Facility Manager response.[45]  Grievance number 985427 involved claims of retaliation and other improper

---

[38]   *See* Doc. 37-1 at 3.
[39]   *See id.*
[40]   *See* Doc. 37-2 at 3.
[41]   *See id.* at 2, 3.
[42]   *See* Doc. 37-3 at 3.
[43]   *See id.* at 2-3; *see also* Doc. 30-1 at 45.
[44]   *See* Doc. 30-1 at 47.
[45]   *Id.* at 45.

actions by Hollibaugh and a "Ms. Heidel."[46]  Grievance 985427 does not name any

of the four remaining Defendants or involve mental health issues, nor was it

appealed beyond the Facility Manger response.[47]

Finally, although grievance number 989665 does identify Stevens and

Singer (and other nonparty corrections officers), Brown simply complains about

various mistreatments like officers throwing his mail on the floor, cursing at him,

retaliating against him, refusing to give him toilet paper, and being generally

"unprofessional."[48]  Brown does not include any complaints regarding his mental

health or his suicide attempt and, importantly, did not appeal this grievance beyond

its first rejection.[49]

### 2.    Relevant but Unexhausted Grievances

In grievance number 985430, dated June 20, 2022, Brown raised issues

regarding lack of appropriate mental health care.[50]  He asserted that defendant

Cousins had failed to properly screen him during his intake into SCI Huntingdon,

and alleged that an unidentified "CB block" officer saw him with a sheet and

"talked [him] out of hanging [him]self" but never "reported it."[51]  Brown appears

to be discussing his medical indifference claim against defendant Hicks.  However,

---

[46]  *Id.* at 51.
[47]  *Id.* at 45, 51.
[48]  *Id.* at 57.
[49]  *Id.* at 45, 57.
[50]  *See* Doc. 37-5 at 3.
[51]  *See id.*

Brown did not appeal this grievance past its initial rejection, likely because it was rejected for being duplicative of an earlier pending grievance (number 981142).[52]

In grievance number 989308, dated July 13, 2022, Brown again raised issues regarding his mental health treatment and Hicks' deliberate indifference.[53]  These issues appear to mirror many of the allegations made in grievance numbers 981142 and 985430, and in fact grievance 989308 was rejected in part because Brown had already raised related claims and was told he could "include [his] concerns in [his] appeal to SOIGA regarding grievance 981142 and 985430."[54]  The grievance was also rejected as untimely and because it contained multiple issues.[55]  The Facility Manager upheld the initial grievance rejection,[56] and Brown did not appeal to the SOIGA.[57]

### 3.    Grievance Number 981142

In grievance 981142, filed on May 15, 2022, Brown asserted claims regarding his suicide attempt and alleged deliberate indifference to serious mental health needs against the "psych department" and specifically Cousins.[58]  Brown discussed his hanging attempt and claimed that Cousins had been deliberately

---

[52]   *See id.* at 2; *see also* Doc. 30-1 at 45.  To the extent that this grievance was also rejected as untimely, *see* Doc. 37-5 at 2, within the grievance Brown avers that he had just returned to SCI Huntingdon on June 17, 2022, and filed the grievance on June 20, 2022.  *See id.* at 3.

[53]   *See* Doc. 37-6 at 6.  In this grievance, Brown identifies Hicks by name.  *See id.*

[54]   *Id.* at 5.

[55]   *See id.*

[56]   *See id.* at 2.

[57]   *See* Doc. 30-1 at 45.

[58]   *See* Doc. 37-4 at 9.

indifferent to his serious medical needs.[59]  Nowhere in grievance 981142, however, does Brown discuss the situation with the corrections officer witnessing him fashioning a makeshift noose and preparing to attempt suicide.

Nevertheless, on appeal to the Facility Manager, Brown provided those additional details, stating that "on 4-27-2022 a[n] officer on CB on first shift seen [sic] me prep a sheet to try and [sic] hang myself."[60]  Brown asserts that this officer "confronted" him and told him to "relax" and "be cool" and that "the[y're] trying to help [him]."[61]  He also reiterated later in the appeal, "[S]taff scene [sic] me tie a sheet and talked me out of hanging myself on 4-27-2022."[62]

Although Brown does not identify the officer, it is clear at this stage in the litigation that this portion of the appeal concerns Brown's allegations against Hicks.  And, while inmates are generally required to identify the individuals involved in the events,[63] this identification requirement can be waived by the DOC if a claim is investigated and rejected on the merits at the highest level.[64]  As the United States Court of Appeals for the Third Circuit has explained, "[W]here the prison has chosen to forgo a rejection on procedural grounds and has elected to

---

[59]   *See id.*
[60]   *Id.* at 7.  There is some inconsistency in the record regarding whether this alleged event occurred on April 27 or April 28.  This discrepancy is immaterial for resolution of the instant motion.
[61]   *Id.*
[62]   *Id.*
[63]   *See* DC-ADM 804 § 1(A)(11).
[64]   *See Rinaldi v. United States*, 904 F.3d 257, 271-72 (3d Cir. 2018).

research, analyze, and deny a claim on the merits, both the purposes of

exhaustion—and exhaustion itself—are satisfied."[65]

Here, in contrast to the circumstances in *Rinaldi v. United States*,[66] prison

authorities did not consider Brown's claim against Hicks on the merits.  The

Facility Manager directly addressed and denied Brown's claims against the

psychology department and Cousins, which were raised in the initial grievance.[67]

However, the Facility Manager summarily dismissed Brown's other claims raised

for the first time on appeal, explaining, "As for your other claims made, they will

not be addressed via this appeal as you provided no witnesses nor other evidence to

corroborate your claims.  Moreover, DC-ADM 804 [§] 2.A.[1.]c. states, 'Only an

issue that was raised for initial review, determination of frivolousness, and/or

rejection may be appealed.'"[68]

Had grievance 981142 been the only grievance asserting Brown's claim

against Hicks, Brown would be out of luck (and out of court).  But recall that, in

---

[65]   *Id.* at 272; *see also Travillion v. Wetzel*, 765 F. App'x 785, 789 (3d Cir. 2019) (nonprecedential) (finding that inmate's identification of "RHU Staff and Unit Management" and "SCI-Rockview staff and/or administration," along with inmate's provision of detailed operative facts, was sufficient to comply with the identification requirements of DC-ADM 804 § 1(A)(11)(b)); *Diaz v. Palakovich*, 448 F. App'x 211, 217 (3d Cir. 2011) (nonprecedential) (determining that inmate's identification of "mailroom staff," along with grievance officer's subsequent interview of mailroom employees, obviated any procedural default that may have resulted from failure to specifically name mailroom employees).

[66]   *Cf. Rinaldi*, 904 F.3d at 270-72 (finding that claim raised for the first time on administrative appeal, which prison authorities addressed and denied on the merits rather than dismissing for procedural default, was fully exhausted for PLRA purposes).

[67]   *See* Doc. 37-4 at 12.

[68]   *Id.*

grievances 985430 and 989308, Brown attempted to assert his claim regarding

Hicks' deliberate indifference to his mental health needs.  Notably, these

grievances were rejected at least in part for being duplicative of grievance 981142.

Moreover, in response to grievance 989308, prison officials specifically told

Brown that he could raise those "concerns" in his appeal of grievances 981142 and

985430.[69]

The upshot of grievances 981142, 985430, and 989308—when considered

together—is that prison officials created an administrative catch-22 for Brown.  In

grievance 981142, his claim against Hicks was rejected on appeal as procedurally

defaulted for not being raised in his initial grievance.  When Brown later attempted

to file new grievances against Hicks, those grievances were rejected as duplicative

of grievance 981142 and he was told to raise his "concerns" as part of the appeal of

his earlier grievance (exactly what he had attempted to do).  Left with no avenue to

assert his claim against Hicks, the administrative process was simply unavailable

to Brown.  And because prison officials' conduct rendered administrative remedies

unavailable, Brown's claim against defendant Hicks must be considered exhausted

under the PLRA.[70]

---

[69]   *See* Doc. 37-6 at 5.
[70]   *See* 42 U.S.C. § 1997e(a); *Ross*, 578 U.S. at 639, 642; *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 155 (3d Cir. 2016); *Small v. Camden County*, 728 F.3d 265, 273-74 (3d Cir. 2013).

14

## IV.  CONCLUSION

Based on the foregoing, the Court will grant in part and deny in part Defendants' motion for summary judgment.  Brown failed to administratively exhaust his claims against defendants Sheeley, Stevens, or Singer, so summary judgment must be granted in their favor.  Brown did exhaust his claim against defendant Hicks because administrative remedies were made unavailable by prison authorities.  Defendants' motion for summary judgment, therefore, will be denied as to Hicks.  An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge