# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TODD ALAN BROWN,

       Plaintiff,

   v.

SUPERINTENDENT RIVELLO, *et al.*,

       Defendants.

No. 4:22-CV-01155

(Chief Judge Brann)

## MEMORANDUM OPINION

### AUGUST 30, 2024

Plaintiff Todd Alan Brown filed the instant *pro se* Section 1983[1] action in July 2022, alleging constitutional violations by various SCI Huntingdon officials and medical staff. Brown's claims have been winnowed to a single Fourteenth Amendment claim of deliberate indifference to serious medical needs against one SCI Huntingdon corrections officer. That officer now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. Genuine disputes of material facts remain in this case, so the Court must deny Defendant's Rule 56 motion.

---

[1]  42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

## I.      FACTUAL BACKGROUND[2]

During all times relevant to the claims underlying this lawsuit, Brown was a

pretrial detainee at SCI Huntingdon.[3]  In his amended complaint—the operative

pleading in this action—he asserted Section 1983 claims under the Fourteenth

Amendment for deliberate indifference to serious medical needs.[4]  Specifically,

Brown averred that he suffers from a mood disorder, depression, anxiety,

restlessness, hyperactivity, impulsivity, and poor reasoning,[5] and tried to take his

own life on April 29, 2022.[6]  Brown alleged that he raised concerns to prison

---

[2]    Local Rule of Court 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  LOCAL RULE OF COURT 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  *Id.*  "Statements of material facts in support of, or in opposition to, a motion [for summary judgment] shall include references to the parts of the record that support the statements."  *Id.*  Defendant filed a properly supported statement of material facts.  *See* Doc. 59.  Brown eventually responded to this statement.  *See* Doc. 65.  Most of Brown's responses, however, are not supported by citations to the record and instead contain nothing more than argument or allegations.  *See id.*  This directly contravenes Local Rule 56.1.  *See Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (explaining that Local Rule 56.1 "is essential to the Court's resolution of a summary judgment motion due to its role in organizing the evidence, identifying undisputed facts, *and demonstrating precisely how each side proposed to prove a disputed fact with admissible evidence.*" (emphasis added) (internal quotation marks and citations omitted)).  Defendant's material facts, therefore, are deemed admitted unless properly countered by Brown or contradicted by the record.  *See* LOCAL RULE OF COURT 56.1.

[3]    Doc. 59 ¶ 1; Doc. 1 at 2.

[4]    Because Brown was a pretrial detainee at the time of the events, his claims implicate the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment's prohibition against cruel and unusual punishments.  *See Jacobs v. Cumberland County*, 8 F.4th 187, 193-94 (3d Cir. 2021); *Thomas v. Cumberland County*, 749 F.3d 217, 223 n.4 (3d Cir. 2014).

[5]    Doc. 22 at 5, 12.  Brown's amended complaint appears at CM/ECF Document Nos. 16-1 and 22.  The Court will cite to Document 22 herein.

[6]    Doc. 22 at 2, 8.

officials the day before he actually attempted suicide, but no one took any

preventive action.[7]  According to Brown, following his suicide attempt, he had to

be life-flighted to a hospital, was on life support for 24 hours, and lost feeling on

the left side of his face for a month, among other injuries.[8]

Following this Court's screening of the amended complaint as required by

28 U.S.C. § 1915A(a), Brown's Section 1983 medical indifference claims were

permitted to proceed against four defendants: corrections officer Greg Hicks and

"CB officers" Sheeley, Stevens, and Singer.[9]  These four Defendants then moved

for summary judgment based on failure to exhaust administrative remedies.[10]

The Court issued an order informing Brown that it would "'consider

exhaustion in its role as a fact finder under Small[ v. Camden County, 728 F.3d

265 (3d Cir. 2013)]' and . . . provide him an 'opportunity to respond.'"[11]  Brown

was given 21 days to supplement his briefing with any additional argument or

evidence in support of his position that he exhausted administrative remedies.[12]

Brown failed to provide any response beyond his previous brief in opposition.  The

Court, however, *sua sponte* ordered Defendants to supplement their Rule 56

motion with the full administrative record for several grievances for which

---

[7]   *Id.* at 5-9.
[8]   *See id.* at 2, 4; Doc. 1 at 5.
[9]   *See* Doc. 20 at 11-13.
[10]   Doc. 26.
[11]   Doc. 34 (citing *Paladino v. Newsome*, 885 F.3d 203, 208, 211 (3d Cir. 2018)).
[12]   *See id.* at 2.

Defendants had only provided piecemeal documentation.[13]  On that more fulsome record, the Court granted in part and denied in part Defendants' Rule 56 motion.[14] The Court found that Brown had failed to exhaust administrative remedies as to his Section 1983 claims against Sheeley, Stevens, and Singer, but that prison officials had rendered administrative remedies unavailable (and therefore exhausted) as to Hicks.[15]

Following discovery, Hicks now moves for summary judgment on the merits of Brown's remaining Fourteenth Amendment medical indifference claim.[16]  He alternatively challenges the availability of compensatory and punitive damages. Hicks' Rule 56 motion is fully briefed and ripe for disposition.

## II.    STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[17]  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[18]  Material facts are those "that could alter the outcome" of the litigation, and "disputes are

---

[13]  *See* Doc. 35.
[14]  *See generally* Docs. 38, 39.
[15]  *See* Doc. 38 at 8-15.
[16]  Doc. 58.
[17]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[18]  FED. R. CIV. P. 56(a).

'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[19]

At the Rule 56 stage, the Court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial."[20]  The Court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor."[21]  This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving party on the claim or claims at issue.[22]  A "scintilla of evidence" supporting the nonmovant's position is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]."[23]  Succinctly stated, summary judgment is "put up or shut up time" for the nonmoving party.[24]

## III.   DISCUSSION

Brown's remaining Section 1983 claim asserts that Hicks was deliberately indifferent to Brown's serious mental health needs.  Specifically, Brown alleges

---

[19]  *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

[20]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[21]  *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014).

[22]  *Liberty Lobby*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986).

[23]  *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252) (alteration in original).

[24]  *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Berkeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).

that Hicks "grew up with" him and knows that he has mental health problems.[25]

Brown avers that, on April 28, 2022, Hicks witnessed him tying a bedside noose in

his cell and responded by telling Brown, "Take that down before you get in

trouble."[26]  Brown further claims that Hicks then stated that if the unit counselor or

other prison officials "don't help you, wait till tomorrow to act a fool OK not on

my shift."[27]  Brown maintains that Hicks failed to inform anyone at SCI

Huntingdon that he had made a noose and was attempting to commit suicide or

take any other precautionary action.[28]  The following day—April 29—Brown

attempted to commit suicide and was nearly successful.[29]

     In his Rule 56 motion, Hicks contends that Brown cannot adduce evidence

that Hicks acted with deliberate indifference.[30]  He also challenges the availability

of compensatory and punitive damages.[31]  After careful consideration, the Court

finds that Brown has proffered sufficient evidence to create a genuine dispute of

material fact as to whether Hicks acted with deliberate indifference toward

Brown's serious medical needs, so summary judgment on this claim must be

denied.  Moreover, the Rule 56 record demonstrates that both compensatory and

punitive damages remain available to Brown.

---

[25]  Doc. 22 at 6.
[26]  *Id.* at 5-6.
[27]  *Id.* at 6.
[28]  *Id.* at 7-8.
[29]  *Id.* at 2, 4.
[30]  Doc. 60 at 4-12.
[31]  *Id.* at 12-15.

## A.   Fourteenth Amendment Medical Indifference

As noted above, Brown was a pretrial detainee during the events underlying the instant lawsuit.  Thus, his claims implicate the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's cruel-and-unusual-punishments provision.  However, it does not appear that the United States Court of Appeals for the Third Circuit has established or adhered to a different standard with respect to Fourteenth Amendment pretrial detainee medical care claims versus those raised by incarcerated individuals under the Eighth Amendment.[32]  Thus, the Court will apply existing Eighth Amendment jurisprudence to the instant Fourteenth Amendment medical indifference claim.

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."[33]  To state an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must plausibly allege that "(1) he had

---

[32]   This remains so even following the Supreme Court of the United States' decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), which established a different standard for pretrial detainee excessive force claims.  *See Thomas v. City of Harrisburg*, 88 F.4th 275, 281 & n.23 (3d Cir. 2023) (applying Eighth Amendment standard to pretrial detainee's medical care claim); *see also Parker v. Butler County*, 832 F. App'x 777, 780 & n.1 (3d Cir. 2020) (nonprecedential) (applying Eighth Amendment standard to pretrial detainee medical care claim while acknowledging Fourteenth Amendment is source of right); *Miller v. Steele-Smith*, 713 F. App'x 74, 76 n.1, 78 (3d Cir. 2017) (nonprecedential) (same); *Goode v. Giorla*, 643 F. App'x 127, 129 & n.3 (3d Cir. 2016) (nonprecedential) (same); *Edwards v. Northampton County*, 663 F. App'x 132, 136-37 (3d Cir. 2016) (nonprecedential) (citing *Natale v. Camden Cnty Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003)).

[33]   *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff."[34]  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[35]

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, or denial of reasonable requests for treatment resulting in suffering or risk of injury.[36]  Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain."[37]  Claims sounding in mere medical negligence will not suffice.[38]

Hicks first argues that qualified immunity bars Section 1983 liability because Brown cannot establish that Hicks' conduct violated the constitution.[39] The Court disagrees.

---

[34] *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023) (citation omitted); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

[35] *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

[36] *See Durmer v. O'Carroll*, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting *Lanzaro*, 834 F.2d at 346).

[37] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

[38] *Rouse*, 182 F.3d at 197.

[39] "Qualified immunity shields federal and state officials from money damages unless a plaintiff [can show] (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).

Brown avers in an affidavit that on April 28, 2022, he spoke with Hicks at his cell.[40]  Brown attests that he was crying and showed Hicks the bedsheet-turned-noose, and that he informed Hicks that he had attempted to hang himself but had been unsuccessful.[41]  Brown maintains that Hicks took no preventive action whatsoever in response to Brown's serious mental health crisis.[42]  Instead, Hicks responded by telling Brown to take down the makeshift noose and warned him not to "do nothing [sic] on [his] shift" because he wanted "to go home at shift change," and that if Brown was going to do something "stupid" that he should wait until the next day.[43]

It appears that this is exactly what Brown did.  On April 29, Brown attempted to hang himself with a similar makeshift noose fashioned from a second bedsheet.[44]  Brown did not respond to the deployment of pepper spray and had to be physically cut down with a "911 tool."[45]  He was immediately taken by ambulance to Penn Highlands Hospital and then transferred to UPMC Altoona.[46] In his verified amended complaint, Brown attests that he had to be "li[fe-]flighted" to UPMC Altoona, and that medical staff did not believe he was going to survive.[47]

---

[40]   Doc. 64-1 at 1-2.
[41]   *Id.*
[42]   *Id.* at 2.
[43]   *Id.* at 1.
[44]   *See* Doc. 64-2 at 3; Doc. 59-7 at 7.
[45]   *See* Doc. 64-2 at 3.
[46]   *See id.* at 2, 3.
[47]   Doc. 22 at 4.

He further averred that he had to be put on life support, suffered loss of feeling in the left side of his face for a month, had temporary difficulty ambulating and blurred vision, and continues to suffer from high blood pressure.[48]

For his part, Hicks denies making the alleged statements to Brown on April 28 and likewise denies that Brown exhibited signs of emotional distress and suicidal intent.[49]  But such denials are quintessential disputes of material fact that cannot be resolved by the Court at summary judgment.

Additionally, to the extent that Hicks argues that the law surrounding deliberate indifference to serious mental health needs with respect to a suicidal pretrial detainee is not "clearly established,"[50] he is incorrect.  In *Palakovic v. Wetzel*, 854 F.3d 209 (3d Cir. 2017), the United States Court of Appeals for the Third Circuit addressed a similar situation involving a suicidal pretrial detainee and found such a Fourteenth Amendment claim to be viable.[51]  Moreover, a particular vulnerability to suicide has long been held to be a serious medical need.[52]  "[I]f [custodial] officials know or should have known of the particular vulnerability to suicide of a [detainee], then the Fourteenth Amendment imposes on them an obligation not to act with reckless indifference to that vulnerability."[53]

---

[48]  *Id.*

[49]  *See* Doc. 59-6 at 9, 10, 11.

[50]  *See* Doc. 60 at 9.

[51]  *See Palakovic*, 854 F.3d at 227-29.

[52]  *See id.* at 227 (citing *Colburn v. Upper Darby Township*, 945 F.2d 1017, 1023 (3d Cir. 1991)).

[53]  *Colburn*, 945 F.2d at 1023 (citations omitted) (second alteration in original).

Hicks cannot satisfy either prong of the qualified immunity analysis when the disputed facts are viewed in a light most favorable to Brown. So qualified immunity, at least at this stage of the litigation, does not apply to preclude Section 1983 liability.

### B.    Monetary Damages

Hicks alternatively argues that, because Brown did not sustain any physical injury that was more than *de minimis*, he cannot recover compensatory damages.[54] The Court is perplexed as to how Hicks deems a self-inflicted hanging attempt that required emergency life-flight to a hospital and which resulted in short-term and possibly permanent injuries to be less than *de minimis* physical injury. In any event, such an argument has no basis in fact or law. And although Hicks contends that "[i]t is undisputed" that Brown did not suffer "any physical injury" from the events of April 28,[55] that issue is very much in dispute, as noted above.

Hicks' argument that punitive damages are unavailable fares no better. Viewing the facts in a light most favorable to Brown, Hicks' conduct can easily be said to involve "reckless or callous indifference to the federally protected rights of others."[56] Telling a suicidal pretrial detainee, who is in emotional distress and has very recently attempted suicide, to wait until the officer's shift is over before

---

[54] *See* Doc. 60 at 12-13 (citing 42 U.S.C. § 1997e(e)).

[55] *Id.* at 13.

[56] *Allah v. Al-Hafeez*, 226 F.3d 247, 251 (3d Cir. 2000) (citing *Coleman v. Kaye*, 87 F.3d 1491, 1497 (3d Cir. 1996)).

attempting suicide again, is the type of conscience-shocking behavior that—if believed by a jury—would permit recovery of punitive damages.

## IV.   CONCLUSION

Based on the foregoing, the Court will deny Hicks' motion for summary judgment under Federal Rule of Civil Procedure 56.  An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge